**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**HEALTH SCIENCE DISTRIBUTORS, CO.,**

-vs-                                                                      Case No.  6:10-cv-1797-Orl-31KRS

**ROBERT USHER-SPARKS; TREVOR TAYLOR; WELLSPRINGS TRADING, LTD; WELLSPRINGS LTD; and SARATI INTERNATIONAL, INC.,**

       **Defendants.**
_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT:**

   This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:**   DEFENDANTS ROBERT USHER-SPARKS AND TREVOR TAYLOR'S MOTION TO DISMISS FOR . . . LACK OF PERSONAL JURISDICTION PURSUANT TO FED. R. CIV. P. 12(b)(2), AND IMPROPER VENUE PURSUANT TO FED. R. CIV. P. 12(b)(3) (Doc. No. 69)[1]
>
> **FILED:**   October 28, 2011

---

[1] Going forward, counsel for the parties may not incorporate arguments made in previous motions or responses into subsequent motions or responses. All information that a party wishes the Court to consider should be included in each motion or response, with specific citations to evidence in the record.

**I.      PROCEDURAL HISTORY**.

Plaintiff Health Science Distributors, Co. ("Health Science") alleges in its second amended complaint that Defendants Robert Usher-Sparks, Trevor Taylor, Wellsprings Trading Ltd., Wellsprings Ltd. (collectively the "Wellsprings entities") and Sarati International Inc. ("Sarati") infringed its "Serenity" trademark in violation of federal and Florida law, engaged in unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a), and engaged in unfair competition in violation of Florida law.  Health Science also alleged that the Wellsprings entities engaged in cybersquatting in violation of 15 U.S.C. § 1125(d).

The undersigned issued a Report and Recommendation recommending that the Court find that service of process has been perfected on Defendants Usher-Sparks and Taylor.  Doc. No. 94.  I will now address the alternative arguments that the second amended complaint should be dismissed as to Usher-Sparks and Taylor for lack of personal jurisdiction and improper venue.  Doc. No. 69.

In support of the remaining arguments, Defendants Usher-Sparks and Taylor rely on their respective declarations.  Doc. No. 18-1, 18-2.  In response to the motion, Health Science relied on the Declaration of David Graves, Doc. No. 63-1, a Notice of Opposition filed in the United States Patent and Trademark Office ("Notice of Opposition"), Doc. No. 63-2, and Taylor's supplemental objections and responses to Health Science's discovery requests, Doc. No. 63-3.  I have considered the motion, response, and supporting documents, and I am generally familiar with the record as a whole.

2

## II.     ANALYSIS.

A plaintiff has the burden "to plead sufficient material facts to establish the basis for exercise of" personal jurisdiction. *See Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000) (citing *Prentice v. Prentice Colour, Inc.*, 779 F. Supp. 578, 583 (M.D. Fla. 1991)).  If the plaintiff meets this burden, "'the burden shifts to the defendant to make a prima facie showing of the inapplicability of the statute [that provides the basis for exercising personal jurisdiction over the defendant].  If the defendant sustains this burden, the plaintiff is required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and not merely reiterate the factual allegations in the complaint.'" *Id*. (quoting *Prentice*, 779 F. Supp. at 583).

"When the district court does not conduct a discretionary evidentiary hearing on a motion to dismiss for lack of personal jurisdiction, the plaintiff must establish a prima facie case of personal jurisdiction over the nonresident defendant. . . . 'A prima facie case is established if the plaintiff presents sufficient evidence to defeat a motion for directed verdict.'" *Cable/Home Commc'n Corp. v. Network Prod., Inc.*, 902 F.2d 829, 855 (11th Cir. 1990) (quoting *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988)).  "The district court must accept the facts alleged in the complaint as true, to the extent that they are uncontroverted by the defendant's affidavits.  When the parties' affidavit and deposition evidence conflict, the district court must construe all reasonable inferences in favor of the plaintiff." *Cable/Home Commc'n Corp*. 902 F.2d at 855 (citations omitted).

*A.     Allegations of the Second Amended Complaint.*

Health Science is a Florida corporation with a place of business in Port Orange, Florida. Doc. No. 59 ¶ 1.  Wellsprings Trading Ltd. ("Wellsprings Trading") is a Bahamian corporation with its principal place of business at P.O. Box 322, St. Peter Port, Guernsey, GY1 3TP, United Kingdom.  *Id*. ¶ 2.  Wellsprings Ltd. is a United Kingdom corporation with its principal place of business at Eros House, Grand Rue, St. Martins (UK) GL4 6LQ, Guernsey.  *Id*. ¶ 3.  Sarati, International, Inc. is a Texas corporation and a manufacturer and distributor of products for Wellsprings Trading or Wellsprings Ltd.  *Id*. ¶¶ 7, 10. Usher-Sparks and Taylor are residents of the United Kingdom who were officers and shareholders of Wellsprings Trading or Wellsprings Ltd. *Id*. ¶ 4.

Health Science manufactures, distributes and sells progesterone cream and owns a trademark for the word "Serenity" which it has used since 1995 to identify the product.  Doc. No. 59 ¶ 18.  Health Science also owns a trademark for the word "Serenity" with a daisy, which it has used to identify its product since 1997.  *Id*. ¶ 19.  Health Science registered the mark for the word "Serenity" and the design of a daisy with the State of Florida on November 22, 2010.  *Id*. ¶¶ 20, 22 and Ex. A.

Health Science operates and controls the websites www.progesterone.com, www.bio-progesterone.com and www.progesterone.org.uk, which advertise, distribute, promote, offer for sale and sell their product with the word "Serenity" and the daisy throughout the United States and in Florida.  Doc. No. 59 ¶ 23.

From 1996 to 2007, Health Science sold its product in the United Kingdom through its distributor Wellsprings Trading.  Doc. No. 59 ¶ 27.  Wellsprings Trading is or was formerly

4

owned, controlled and directed by Usher-Sparks and Taylor. *Id*. ¶ 28. In March of 2007, Health Science terminated its business relationship with Wellsprings Trading. Doc. No. 59 ¶ 29. Wellsprings Trading subsequently engaged Sarati to manufacture, distribute, promote, offer for sale and sell progesterone cream in the United States, including Florida, in packaging which displays a mark similar to Health Science's mark with the word "Serenity" and a daisy. *Id*. ¶ 30-33.

After the distribution relationship ended, Wellsprings[2] engaged Sarati to manufacture, distribute, promote, offer for sale and sell natural progesterone cream bearing the "Serenity" mark. *Id*. ¶ 30. At the time of the filing of the second amended complaint, Sarati and Wellsprings were selling and offering for sale the allegedly infringing product throughout the United States, including in Florida. *Id*. ¶ 31.

Wellsprings Trading or Wellsprings Ltd. operates and/or controls the websites www.wellsprings-health.com, www.serenityprogesteronecream.com, www.serenityprogesterone.com and www.progesterone.co.uk, through which the allegedly infringing product is promoted, offered for sale and sold in the United States and Florida. *Id*. ¶ 38. Usher-Sparks registered the domain name www.serenityprogesteronecream.com on January 9, 2007. *Id*. ¶ 40 and Ex. E.[3] The product and the websites indicate that the product was manufactured in the United States. Doc. No. 59 ¶ 34.

---

[2] Health Science sometimes refers to the Wellsprings entities simply as Wellsprings. Doc. No. 59 ¶ 4.

[3] Many of the exhibits to the second amended complaint appear to be information obtained by accessing various websites. The exhibits are not authenticated. Because Usher-Sparks and Taylor do not contend that these exhibits are not authentic, the Court may accept them as allegations incorporated into the second amended complaint pursuant to Fed. R. Civ. P. 10(c).

Several pages of printouts from Wellsprings' websites contain a testimonial of a customer from Clearwater, Florida. Doc. No. 59 ¶¶ 13, 39 and Ex. D. Another website advertised that the infringing product could be purchased in Lakeland, Brandon and St. Petersburg, Florida. *Id.* ¶ 12.

*B.     Evidence.*

Taylor is an officer and director of Wellsprings Trading. Doc. No. 18-1 ¶ 13. Usher-Sparks was a shareholder in Wellsprings Trading and resigned as director in March of 2010. Doc. No. 18-2 ¶ 4. Usher-Sparks subsequently sold his shares in Wellsprings Trading to Taylor. *Id.*

Usher-Sparks and Taylor were Health Science's primary contacts with Wellsprings during the time of the distribution agreement. Doc. No. 63-1 ¶ 2 (Graves Decl.). David Graves, the owner of Health Science, averred that he understood that Usher-Sparks and Taylor directed, controlled and owned the Wellsprings entities. *Id.*

On August 2, 2011, Taylor, through an attorney, filed a "Notice of Opposition" with the United States Patent and Trademark Office, Trademark and Trial Appeal Board ("TTAB"). Doc. No. 63-2 at 4-7. In that opposition, "Opposer, Trevor Taylor . . . , an individual residing in the United Kingdom" claimed that he had made intervening use of the term "Serenity" prior to July 15, 2010, and that Health Science's claims to exclusive and prior use of the mark were fraudulent. *Id.* at 5-6.

Taylor declares that he does not have personal contacts with Florida. Among other things, he does not own or lease personal property in Florida, he does not have and has never had an office, employees, agents or personal representatives in Florida or a bank account, mailing address, post office box or telephone number in Florida. Doc. No. 18-1 ¶¶ 5-7. He does not sell and has never personally sold goods or services in Florida. He does not personally operate a business or

business venture in Florida and has not entered into a contract in his personal capacity with residents of Florida. *Id.* ¶ 9. His only contact with Florida has been in his capacity as an officer and director of Wellsprings Trading for the sole benefit of the business entity. *Id.* ¶ 13.

Usher-Sparks declares that he does not have personal contacts with Florida. Among other things, he does not own or lease personal property in Florida, he does not have and has never had an office, employees, agents or personal representatives in Florida or a bank account, mailing address, post office box or telephone number in Florida. Doc. No. 18-2 ¶¶ 5-8. He has never visited Florida. *Id.* ¶ 5. He does not sell and has never personally sold goods or services in Florida. He does not personally operate a business or business venture in Florida and has not entered into a contract in his personal capacity with residents of Florida. Any contacts he may have had with Florida were in a business capacity as an officer and director of Wellsprings Trading. *Id.* ¶ 9.

   C.   *Application of Law to the Facts.*

Health Science argues in a footnote that this Court can exercise personal jurisdiction over Usher-Sparks or Taylor under Florida's long-arm statute. Doc. No. 63 at 4 n.1. It argues, alternatively, that if the Court cannot exercise personal jurisdiction under the Florida long-arm statute, it can exercise jurisdiction over Usher-Sparks and Taylor pursuant to Federal Rule of Civil Procedure 4(k)(2), which provides as follows: "For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws."

Accordingly, I will analyze first the application of Florida's long-arm statute and then turn, if necessary, to the application of Rule 4(k). I assume for purposes of this analysis that the Court has determined that service of process has been perfected as to Usher-Sparks and Taylor.

1. <u>Florida's Long-Arm Statute</u>.

The Florida long-arm statute provides both specific and general bases for exercising jurisdiction over a non-resident defendant. Specific jurisdiction exists "when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum. . . ." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984). General jurisdiction exists "[w]hen a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum. . . ." *Id.* at 415 n. 9.

Health Science asserts that Usher-Sparks and Taylor caused intentional injury in Florida and, therefore, that they can be subject to personal jurisdiction in Florida, presumably pursuant to section 48.193(1)(b) of Florida's long-arm statute. This section provides as follows:

> 1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself . . . to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts: . . .
>
>    (b) Committing a tortious act within this state.

"[F]or personal jurisdiction to attach under the 'tortious activity' provision of the Florida long-arm statute, the plaintiff must demonstrate that the non-resident defendant 'committed a substantial aspect of the alleged tort in Florida' by establishing that the activities in Florida 'w[ere] essential to the success of the tort.'" *Cable/Home Comm. Corp.*, 902 F.2d at 857 (quoting *Watts v. Haun*, 393

So.2d 54, 56 (Fla. 2d Dist. Ct. App. 1981)). Trademark infringement is a tort within the reach of section 48.193(1)(b). *See, e.g., KVAR Energy Savings, Inc. v. Tri-State Energy Solutions,* No. 6:08-cv-85-Orl-19KRS, 2009 WL 103645, at * 11 (M.D. Fla. Jan. 15, 2009).

Health Science argues that Usher-Sparks and Taylor caused injury in Florida by doing the following: having websites which can be accessed by consumers in Florida; targeting Florida consumers by using a testimonial from a Florida consumer; and, by actual sales into Florida as evidenced by the Florida testimonial.

Pursuant to the corporate shield doctrine, the acts of a corporate employee performed in his or her corporate capacity may not form the basis for jurisdiction over the corporate employee in his or her individual capacity. *KVAR Energy*, 2009 WL 103645, at * 8 (citing *Doe v. Thompson*, 620 So.2d 1004, 1006 (Fla. 1993)). This doctrine protects a party from being subjected to personal jurisdiction in this forum because his relevant conduct was performed only as a corporate officer. *Id.* at * 9.[4]

Health Science alleges that Taylor "is . . . an officer and shareholder of Wellsprings who directs, controls and is a primary participant in its actions . . . ." Doc. No. 59 ¶ 6. Usher-Sparks "was an officer and shareholder of Wellsprings, and controlled the operations of and was a primary participant in the improper conduct . . . ." *Id.* ¶ 4. It alleges that Usher-Sparks registered the domain name serenityprogesteronecream.com on January 9, 2007, *id.* ¶ 40, but that Wellsprings "operates and/or controls the websites www.wellsprings-health.com,

---

[4] The corporate shield doctrine does not apply when a corporate officer himself is alleged to have committed an intentional tort, such as trademark infringement. *KVAR Energy*, 2009 WL 103645, at * 11. As discussed in more detail herein, Health Science does not allege or show that either Usher-Sparks or Taylor individually committed any act of trademark infringement.

9

www.serentiyprogesteronecream.com, www.serenityprogesterone.com and www.progesterone.co.uk, through which the Wellsprings product is promoted, offered for sale and sold in the United States generally, and Florida specifically." *Id.* ¶ 38. Based on these allegations, Usher-Sparks and Taylor are alleged to have engaged in improper conduct as agents of the corporate Defendants.

While Usher-Sparks appears to have personally registered one or more domain names, Health Science alleges that the corporate Defendants operate and control the websites on which the allegedly infringing products are offered for sale. Because it is not alleged or shown that either Usher-Sparks or Taylor personally engaged in any act of trademark infringement, their conduct as officers of the corporate Defendants cannot form the basis for exercise of specific personal jurisdiction over them.

Health Science argues that the United States Supreme Court has rejected the corporate shield doctrine. This is not entirely correct. The Court rejected "the suggestion that employees who act in their official capacity are somehow shielded from suit in their individual capacity." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n. 13 (1984) (citing *Calder v. Jones*, 465 U.S. 783 (1984)). It further stated as follows: "But jurisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him . . . . Each defendant's contacts with the forum State must be assessed individually." *Id*. So, for example, in *Calder* the Court held that personal jurisdiction could be exercised over individual defendants who wrote and edited the allegedly defamatory article. *See* 465 U.S. at 790. In *SEC v. Carrillo*, 115 F.3d 1540 (11th Cir. 1997), the United States Court of Appeals for the Eleventh Circuit found that personal jurisdiction could be exercised over individual defendants who placed advertisements

promoting unregistered securities and arranged for favorable articles to be written about the securities for publication. *See, e.g.,* 115 F.3d at 1548. There is no similar allegation of direct, personal involvement in the alleged trademark infringement in this case by Usher-Sparks or Taylor.

Health Science does not contend that the Court could exercise general jurisdiction over Usher-Sparks or Taylor, and the allegations and evidence presented do not show that either of the individual defendants had minimum contacts in their individual capacities with Florida, or with the United States, to support the exercise of general jurisdiction. General jurisdiction applies when a defendant's activities in the forum are substantial or continuous and systematic. *See, e.g., Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984). Usher-Sparks and Taylor's declarations establish that neither of them has had continuous and systematic contact with Florida or the United States in their individual capacity. Health Science has not offered evidence that either Usher-Sparks or Taylor, in his individual capacity, had substantial or continuous and systematic contact with Florida, or with the United States.

        2.     Rule 4(k).

Rule 4(k), sometimes referred to as the federal long-arm statute, applies by its terms only when a claim arises under federal law and personal jurisdiction could not be exercised over the defendant in any state of the United States. Usher-Sparks and Taylor do not argue that personal jurisdiction could be exercised over them in any state court of the United States. When, as here, a defendant contends that he cannot be sued in Florida and fails to identify any other state where suit is possible, the court is not required to analyze the laws of all fifty states to determine whether any state has jurisdiction over the defendant. *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210,

1218 n. 22 (11th Cir. 2009). Rather, the court is entitled to rely on Rule 4(k)(2) and consider the a defendant's contacts with the United States as a whole for purposes of the due process analysis. *Id.*

"Considerations of due process require that a non-resident defendant have certain minimum contacts with the forum, so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. The nature and quality of these contacts, however, vary depending upon whether the type of personal jurisdiction being asserted in specific or general." *Consolidated Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000). "Specific jurisdiction arises out of a party's activities in the forum that are related to the cause of action alleged in the complaint. . . . [A] court has the minimum contacts to support specific jurisdiction only where the defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Id.* (internal citations omitted). "General personal jurisdiction . . . arises from a defendant's contacts with the forum that are unrelated to the cause of action being litigated. The due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction, and require a showing of continuous and systematic general business contacts between the defendant and the forum . . . ." *Id.* at 1291-92 (internal citations omitted).

The only additional act that Health Science relies on to support exercise of jurisdiction over either individual defendant based on contacts outside of Florida is Taylor's filing of a Notice of Opposition with the TTAB in Washington, D.C.

In *Quick Technologies, Inc. v. Sage Group PLC*, 313 F.3d 338 (5th Cir. 2002), the United States Court of Appeals for the Fifth Circuit considered the question of whether filings with the United States Patent and Trademark Office ("USPTO") were sufficient to establish jurisdiction

under Rule 4(k). In that case, the filings were made by Sage Group, which was a public limited company organized under the laws of England and Wales. *Id.* at 342. Sage Group filed a Notice of Opposition to a trademark registration application for the mark "SAGE INFORMATION SYSTEM" filed by Quick Technologies, Inc. ("QTI"), and an intent to use application for the mark "SAGE," which it later abandoned. *Id.* QTI subsequently sued Sage Group for trademark infringement and unfair competition in the United States District Court for the Northern District of Texas. The District Court dismissed Sage Group for lack of personal jurisdiction. The Fifth Circuit affirmed the District Court. It found, among other things, that QTI's claim did not "arise out of or relate to" the documents Sage Group filed with the USPTO. *Id.* at 345. Similarly, in the present case, Health Science's claims do not arise out of or relate to Taylor's Notice of Opposition filed with the TTAB.

Accordingly, Health Science has not established that Usher-Sparks or Taylor individually have sufficient minimum contacts with the United States to support exercise of personal jurisdiction over either of them consistently with due process. As for the motion to dismiss for improper venue, no other venue in the United States has been identified as a forum in which personal jurisdiction could be exercised over either of the individual defendants. Therefore, the motion to dismiss for lack of personal jurisdiction as to Usher-Sparks and Taylor is well taken.

### III. RECOMMENDATION.

Based on the foregoing, I respectfully recommend that Defendants Robert Usher-Sparks and Trevor Taylor's Motion to Dismiss Lack of Personal Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(2) and Improper Venue be **GRANTED**.

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**Respectfully Recommended** this 29th day of February, 2012.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE

Copies to:
Presiding District Judge
Courtroom Deputy Clerk
Counsel of Record